## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

PELOTON INTERACTIVE, INC.,

<em>Plaintiff,</em>

v.

FLYWHEEL SPORTS, INC.,

<em>Defendant.</em>

Case No.  2:18-CV-00390-RWS-RSP

## DEFENDANT FLYWHEEL SPORTS, INC.'S MOTION
## TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

III.    ARGUMENT ........................................................................................................ 4

   A.   The Private Interest Factors Weigh in Favor of Transfer ................................. 6

      1.   Most, if Not all, Expected Party Witnesses are Located in the
           Southern District of New York ..................................................................... 7

      2.   Numerous Material Non-party Witnesses are Located in the
           Southern District of New York ..................................................................... 8

      3.   The Majority of Documentary Proof is Located in New York
           and No Documentary Proof is Located in Texas .......................................... 9

      4.   Practical Considerations Favor Transfer Because the Southern
           District of New York is Familiar with the Relevant Technology .............. 10

   B.   The Public Interest Factors Weigh in Favor of Transfer ................................ 12

      1.   The Southern District of New York has a Greater Local Interest
           in This Action ............................................................................................. 12

      2.   The Remaining Public Factors are Neutral ................................................. 14

IV.     CONCLUSION ................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2011)...........................................................................13

*Deep Green Wireless LLC v. Ooma, Inc.*,
  No. 2:16-CV-604, 2017 U.S. Dist. LEXIS 23509 (E.D. Tex. Feb. 20, 2017)....................9, 10

*Dietgoal Innovations LLC v. Time Inc.*,
  No. 2:12-CV-337, 2013 U.S. Dist. LEXIS 41524 (E.D. Tex. Mar. 25, 2013) ........................14

*Evolutionary Intelligence, LLC v. Apple, Inc.*,
  No. 12-CV-783, 2013 U.S. Dist. LEXIS 187467 (E.D. Tex. Aug. 27, 2013) ................ *passim*

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)................................................................... *passim*

*GeoTag, Inc. v. Aromatique, Inc.*,
  No. 2:10-CV-570, 2013 U.S. Dist. LEXIS 173481 (E.D. Tex. Jan. 14, 2013).........................9

*In re Google Inc.*,
  No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017) ...................................7

*Groupchatter, LLC v. Landis + Gyr Techs., LLC*,
  No. 6:15-CV-863, 2016 U.S. Dist. LEXIS 165746 (E.D. Tex. Feb. 11, 2016) .........7, 8, 12, 14

*In re Horseshoe Entm't.*,
  337 F.3d 429 (5th Cir. 2003) .........................................................................................4

*In re HP Inc.*,
  No. 2018-149, 2018 U.S. App. LEXIS 27963 (Fed. Cir. Sept. 25, 2018) ................................8

*Icon Health & Fitness, Inc. v. Peloton Interactive, Inc.*,
  16-CV-8303 (S.D.N.Y.)..............................................................................................11, 12

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17-CV-443, 2017 U.S. Dist. LEXIS 138108 (E.D. Tex. Aug. 28, 2017) ....................10

*Landmark Tech., LLC v. Ann Inc.*,
  No. 6:12-CV-672, 2013 U.S. Dist. LEXIS 92384 (E.D. Tex. July 1, 2013) ..........................14

*Lifestyle Sols., Inc. v. Abbyson Living LLC*,
  No. 2:16-CV-1290, 2017 U.S. Dist. LEXIS 187241 (E.D. Tex. Nov. 10, 2017) ...................12

*Lone Star Document Mgmt., LLC v. Catalyst Repository Sys.*,
    No. 6:12-CV-164, 2013 U.S. Dist. LEXIS 144617 (E.D. Tex. Mar. 15, 2013) ....................11

*Mears Techs., Inc. v. Finisar Corp.*,
    No. 2:13-CV-376, 2014 U.S. Dist. LEXIS 56880 (E.D. Tex. Apr. 24, 2014).........................11

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*,
    433 F. Supp. 2d 795 (E.D. Tex. 2006)....................................................................................8

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)........................................................................................5, 13

*Phil-Insul Corp. v. Reward Wall Sys.*,
    No. 6:11-CV-53, 2012 U.S. Dist. LEXIS 114493 (E.D. Tex. Feb. 10, 2012) .....................4, 6

*Realtime Data, LLC v. Fujitsu Am., Inc.*,
    No. 6:16-CV-1035, 2017 U.S. Dist. LEXIS 27426 (E.D. Tex. Feb. 27, 2017) ......................13

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) ............................................................................................................5

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014)........................................................................................5, 14

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...............................................................................................4

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................................................4

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ..................................................................................................6

*In re Volkswagen of Am.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ..........................................................................4, 5, 8

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009)..............................................................................................10

*VR Optics, LLC v. Peloton Interactive, Inc.*,
    No. 16-CV-6392 (S.D.N.Y.) ....................................................................................... *passim*

*Wireless Recognition Techs. LLC v. A9.com Inv.*,
    No. 2:10-CV-364, 2012 U.S. Dist. LEXIS 19210 (E.D. Tex. Feb. 14, 2012) .......................13

**Statutes**

28 U.S.C. § 1400(b) ...........................................................................................................5

28 U.S.C. §1404(a) ........................................................................................................1, 4

iv

I.  **INTRODUCTION**

New York-based fitness company Peloton Interactive, Inc. ("Peloton") has sued New York-based fitness company Flywheel Sports, Inc. ("Flywheel") for alleged infringement of two related patents.  Pursuant to 28 U.S.C. §1404(a), Flywheel moves to transfer this action to the U.S. District Court for the Southern District of New York.  This case has no connection to the Eastern District of Texas and transfer will serve both the convenience of the parties and the interests of justice.

The relevant private and public interest factors used to evaluate transfer motions in this district strongly favor transfer to the Southern District of New York, an undeniably more convenient forum.  With respect to the private interest factors: (1) Flywheel's accused product, which was developed in New York, is a stationary exercise bike designed to deliver at-home cycling classes through an integrated tablet computer or by streaming content to a user's television; (2) both Flywheel and Peloton were founded in New York and at all times have maintained their headquarters in New York; (3) most, if not all, of both parties' material witnesses are located in the New York metropolitan area; (4) numerous potentially significant non-party witnesses are also located in the New York metropolitan area; and (5) all of the documentary evidence related to the design, development, operation, marketing and sales of both parties' exercise bikes at issue in this case are located in New York.  Further, the Southern District of New York has spent significant time becoming familiar with the technology at the heart of this action.  Peloton has been sued for infringement of patents related to its own at-home exercise bike in two separate actions, the first of which ultimately settled, but only after Peloton successfully moved to transfer the case to the Southern District of New York arguing that it was the most convenient forum, and the second of which remains pending in the Southern District of New York.

With respect to the public interest factors, the Southern District of New York enjoys a significant local interest in the outcome of this action because both parties were founded and at all times headquartered there; the technology at issue was developed there; this action involves accusations against individuals who work and/or reside there, and both parties employ more people there than anywhere else.

In contrast to the overwhelming connections to the Sothern District of New York, there are no significant connections between this action and the Eastern District of Texas.  Indeed, there does not appear to be any potentially significant witnesses located within the Eastern District of Texas.  Further, although Flywheel has sold the accused Flywheel bike in Texas, the same can be said for almost all of the states in this country.

 Peloton could have filed this action in the Southern District of New York, and the relevant factors regarding convenience and the interest of justice weigh heavily in favor of transfer.

## II.  <u>FACTUAL BACKGROUND</u>

Peloton accuses Flywheel's FLY Anywhere exercise bike of infringing claims of U.S. Patent No. 9,174,085 ("the '085 Patent") and U.S. Patent No. 9,233,276 ("the '276 Patent") (together, the "Asserted Patents").  Peloton and Flywheel were both founded in New York City and at all times have been headquartered there.  (Complaint (Dkt. No. 1), ¶ 8; (Declaration of Jeffrey S. Ginsberg ("Ginsberg Decl.") submitted herewith, Ex. A, Doc. 27-1 at 1); Declaration of Michael Cohen ("Cohen Decl.") submitted herewith, ¶ 3.)  In a recent suit in which Peloton's own exercise bike with an integrated tablet computer was accused of patent infringement, Peloton successfully moved to transfer the case from the Central District of California to the Southern District of New York, admitting that "[s]ince its founding in 2012, Peloton has always

been based in New York City, where it has maintained its headquarters, [where most of its employees are located, and where it has] performed the **vast bulk of its operations**." (Ginsberg Decl., Ex. A, Doc. 27-1 at 2, 3 (emphasis added); *see also* Complaint, ¶ 27 (Peloton "develop[ed] and create[d] the first prototype of the Peloton Bike" in New York City).) Flywheel is no different—since its founding in 2010, it has called New York its home, and the vast bulk of the design, development and marketing of the accused FLY Anywhere bike has taken place in New York City. (Cohen Decl., ¶¶ 3, 5, 8-10.)

Further, as reflected in a recent submission to the United States Patent and Trademark Office, four of the Asserted Patents' five inventors reside in the New York metropolitan area— Peloton's Chief Executive Officer and Chief Operating Officer, John Foley and Thomas Cortese, respectively, and Yu Feng and Christopher Sira. (Ginsberg Decl., Ex. F at 1-4.) Mr. Sira is a non-party, former employee of Peloton. (*Id*., Ex. A, Doc. 27-2, ¶ 9.) Mr. Feng may also be a non-party.[1]

In addition, non-parties Eric Villency and Joseph Coffey, and their non-party design firm The Villency Design Group LLC ("Villency Design Group"), are believed to have relevant information concerning substantial issues in this case. To start, Messrs. Villency and Coffey were involved significantly in the development of Peloton's exercise bike, as well as its production and supply chain management. (Ginsberg Decl., Ex. A, Doc. 27-1 at 3, 8.) Further, Peloton has alleged in *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (S.D.N.Y.) ("*VR Optics*"), a patent infringement suit pending in the Southern District of New York, that

---

[1] A Yony Feng is identified as Peloton's New York-based co-founder and Chief Technology Officer. (Complaint, ¶ 26.) At present, it is not certain the relation, if any, between Yony Feng and Yu Feng. In any event, both Yu Feng and Yony Feng are identified as being located in New York. The Asserted Patents' remaining inventor, Hans Woolley, is identified as being located in West Hollywood, California (Ginsberg Decl., Ex. F at 2), and is also believed to be a non-party.

Villency Design Group represented that Peloton's bike did not infringe certain prior art patents closely related to the Asserted Patents in this action.  (*See* Ginsberg Decl., Ex. C at ¶¶ 46-47, 53, 61-62.)  Villency Design Group has its principal place of business in the Southern District of New York, and Messrs. Coffey and Villency are both located there.  (Ginsberg Decl., Ex. A, Doc. 27-1 at 3, 8; Ex. D at ¶¶ 2-4.)

## III.   ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Phil-Insul Corp. v. Reward Wall Sys.*, No. 6:11-CV-53, 2012 U.S. Dist. LEXIS 114493, at *4 (E.D. Tex. Feb. 10, 2012) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  In accordance with Fifth Circuit authority,[2] courts should transfer a case to another district if the case could have been brought in that district and would be "clearly more convenient" to resolve in that district.  *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (citing *In re Volkswagen of Am.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). To determine whether another district is sufficiently more convenient, courts look to several private and public interest factors "'based on the situation which existed when suit was instituted.'"  *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 12-CV-783, 2013 U.S. Dist. LEXIS 187467, at *11 (E.D. Tex. Aug. 27, 2013) (quoting *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003)).

---

[2] Regional circuit law applies to motions to transfer in patent cases.  *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to ensure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (internal quotation marks omitted).  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (internal quotation marks omitted).  The "Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).  And the presence of witnesses or evidence outside the proposed transferee forum or the current forum does not factor into the transfer analysis.  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).  Where most, if not all, potential material witnesses and relevant evidence are concentrated in the proposed transferee forum, that forum is "clearly" more convenient and transfer is appropriate.  *Nintendo*, 589 F.3d at 1199.

The threshold question is met here—this action could have been brought in the Southern District of New York.  Venue for domestic corporations in patent cases is governed exclusively by 28 U.S.C. § 1400(b).  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518-19 (2017).  Section 1400(b) provides: "Any civil action for patent infringement may be brought [1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."  "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517.  As a Delaware corporation (Complaint, ¶ 9),

Flywheel "resides" only in Delaware.  However, Flywheel developed, markets and sells the accused products from its headquarters in New York City.  (Cohen Decl., ¶¶ 3, 5, 7-9.)  Transfer is thus appropriate where, as here, the private and public interest factors clearly favor the proposed transferee forum.

### A.    The Private Interest Factors Weigh in Favor of Transfer

Both Flywheel and Peloton were founded and at all times headquartered in the Southern District of New York.  (Cohen Decl., ¶ 3; Ginsberg Decl., Ex. A, Doc. 27-1 at 2.)  Both companies developed the relevant technology and products within that district.  (Cohen Decl., ¶ 5; Ginsberg Decl., Ex. A, Doc. 27-1 at 2-4.)  The private interest factors strongly favor transfer to the Southern District of New York, where both parties' records are located, where most, if not all, of the likely party witnesses work, and where important non-party witnesses would be subject to that court's subpoena power.

"The convenience of witnesses is probably the single most important factor" in the transfer analysis.  *Genentech*, 566 F.3d at 1343.  This factor "heavily favors transfer when a 'substantial number of material witnesses reside in the transferee venue' and no witnesses reside in the transferor venue."  *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, No. 6:11-CV-53, 2012 U.S. Dist. LEXIS 114493, at *9 (E.D. Tex. Feb. 10, 2012) (quoting *Genentech*, 566 F.3d at 1344-45).  Courts in this circuit apply the "100 mile rule": where the proposed transferee forum is more than 100 miles from the current forum, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 204-05 (5th Cir. 2004).  Marshall, Texas is more than 1400 miles from New York City.

6

1.     *Most, if Not all, Expected Party Witnesses are Located in the Southern District of New York*

Flywheel's founders and all of its employees who are responsible for the design, development, testing, marketing, and sales of the FLY Anywhere bike work and reside in the Southern District of New York and surrounding communities.  (Cohen Decl., ¶¶ 4-5, 8-10.)  This includes its chief executive officer, chief financial officer, chief operating officer, and chief technology officer.  (*Id.*, ¶ 5.)  Unsurprisingly, the employees of New York-based Peloton responsible for the design, development, sales and marketing of the Peloton bike are also located in the New York metropolitan area.[3]  (Ginsberg Decl., Ex. A, Doc. 27-1 at 2-3, 8.)  At least two of the Asserted Patents' inventors are Peloton employees who reside in the New York metropolitan area: John Foley and Thomas Cortese, Peloton's CEO and COO, respectively.  (*Id.*, Ex. F at 1; Complaint, ¶¶ 22, 25.)

The Federal Circuit, applying Fifth Circuit law, recently found the fact that the "vast majority" of a defendant's employees work and reside in the transferee district to "weigh[] strongly" in favor of transfer.  *In re Google Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848, at *7 (Fed. Cir. Feb. 23, 2017); *see also Groupchatter, LLC v. Landis + Gyr Techs., LLC*, No. 6:15-CV-863, 2016 U.S. Dist. LEXIS 16574, at *15-16 (E.D. Tex. Feb. 11, 2016).  The present situation presents an even stronger case for transfer because **both** Peloton and Flywheel are headquartered in New York and **both** transact the majority of their business related to the products in question in New York.  Of course, it will be much more expensive for the parties to

---

[3] Although Peloton alleges that it has "announced" its plans to open a second corporate headquarters in Plano, Texas (Complaint, ¶ 8; *see also id.*, ¶ 41), analysis of a § 1404(a) motion is made with regard to "the situation which existed when suit was instituted." *Evolutionary Intelligence, LLC*, 2013 U.S. Dist. LEXIS 187467, at *11 (internal quotation marks omitted). Peloton has not alleged that any of its witnesses work or reside in the Eastern District of Texas, and Peloton's plans for the future are irrelevant to this Court's analysis. *Id.*

have their willing witnesses travel to the Eastern District of Texas to testify as compared to the Southern District of New York, where most, if not all, of the parties' material witnesses work and/or reside. *See Genentech*, 566 F.3d at 1345 (where "a substantial number of material witnesses reside within the transferee venue . . . , and no witnesses reside within the Eastern District of Texas, [this factor] weigh[s] substantially in favor of transfer").

### 2. *Numerous Material Non-party Witnesses are Located in the Southern District of New York*

The compulsory process factor "instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Groupchatter, LLC,* 2016 U.S. Dist. LEXIS 16574, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor also favors transfer where non-party witnesses are likely to have relevant documentary evidence requiring compulsory process. *See Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006). "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 U.S. App. LEXIS 27963, at *8 n.1 (Fed. Cir. Sept. 25, 2018).

The compulsory process factor strongly favors transfer here because a significant number of non-party witnesses reside in the Southern District of New York or within its subpoena power. As noted above, two of three non-party inventors listed on the Asserted Patents, Messrs. Feng and Sira, are believed to be located in the New York metropolitan area. (Ginsberg Decl., Ex. F at 1-2.) Each of these non-party inventors is likely to have relevant information regarding the development and prosecution of the Asserted Patents, and Flywheel expects to seek their testimony and relevant documents.

8

In addition, Flywheel believes that non-parties Messrs. Villency and Joseph Coffey, and their design firm, Villency Design Group, all located in New York, will have significant relevant information.  (*Id.*, Ex. A, Doc. 27-1 at 3, 8.)  Messrs. Villency and Coffey were involved in the development of the Peloton bike (*id.*), and Peloton has alleged that their design firm Villency Design Group represented that Peloton's bike did not infringe certain prior art patents (*see id.*, Ex. C, at ¶¶ 46-47, 53, 61-62).

Flywheel is not aware of any non-party witnesses likely to have relevant testimony that work or reside in the Eastern District of Texas.  Where, as here, a significant number of non-party witnesses are located in the transferee district, this factor favors transfer.  *See Deep Green Wireless LLC v. Ooma, Inc.*, No. 2:16-CV-604, 2017 U.S. Dist. LEXIS 23509, at *12-13 (E.D. Tex. Feb. 20, 2017); *GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10-CV-570, 2013 U.S. Dist. LEXIS 173481, at *30 (E.D. Tex. Jan. 14, 2013) (compulsory process factor favors transfer where proposed transferee forum "would have absolute subpoena power over [third party] witnesses").

### 3. *The Majority of Documentary Proof is Located in New York and No Documentary Proof is Located in Texas*

As recognized by the Federal Circuit, the bulk of relevant evidence in a patent infringement action usually comes from the accused infringer, and thus "the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Genentech*, 566 F.3d at 1345 (internal quotation marks omitted).  This is true "regardless of whether the documents are in electronic form and can be easily transported."  *See Deep Green Wireless LLC*, 2017 U.S. Dist. LEXIS 23509, at *6; *see also Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 6:12-CV-783, 2013 U.S. Dist. LEXIS 187467, at *16 (E.D. Tex. Aug. 27, 2013) ("[T]he physical accessibility to sources of proof is an important factor, even in view of modern advances in the electronic transportation of documents.").

9

All of Flywheel's documents that are likely to be most relevant to this action are located in the Southern District of New York, including all records relating to the design, development, testing, marketing and sales of the accused FLY Anywhere bike.  (Cohen Decl., ¶¶ 4-5, 8-10.) *See Evolutionary Intelligence, LLC*, 2013 U.S. Dist. LEXIS 187467, at *14 ("Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters.").  Likewise, Peloton has represented that all of its relevant evidence is located in New York.  (Ginsberg Decl., Ex. A, Doc. 27-1 at 9-10.)  And while Flywheel has sold its exercise bikes to customers in Texas, Flywheel has also sold its bikes to customers in forty-seven of this country's fifty states.  (Cohen Decl., ¶ 11.)

The relative ease of access to sources of proof factor favors transfer where, as here, the majority of a defendant's documents are located in the proposed transferee forum.  *See, e.g.*, *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443, 2017 U.S. Dist. LEXIS 138108, at *30 (E.D. Tex. Aug. 28, 2017); *Deep Green Wireless LLC*, 2017 U.S. Dist. LEXIS 23509, at *8-9; *Evolutionary Intelligence, LLC*, 2013 U.S. Dist. LEXIS 187467, at *16-17.

Further, as set forth above, non-parties Messrs. Villency and Coffey and their design firm, Villency Design Group, all located in New York, are expected to have substantial documentary evidence regarding the design and development of Peloton's bike as well as prior art to the Asserted Patents.

### 4. *Practical Considerations Favor Transfer Because the Southern District of New York is Familiar with the Relevant Technology*

"[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice."  *In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349, 1351 (Fed. Cir. 2009).  The multiple lawsuits need not be identical; where cases overlap, and the transferee district has developed a

"familiarity" with the technology at issue, this factor weighs in favor of transfer.  *See id.*; *Lone Star Document Mgmt., LLC v. Catalyst Repository Sys.*, No. 6:12-CV-164, 2013 U.S. Dist. LEXIS 144617, at *13 (E.D. Tex. Mar. 15, 2013) ("Judicial economy is served by keeping related cases in the court that spends significant resources familiarizing itself with the patent and the technology.").

Peloton has been accused of infringement related to its at-home exercise bike in two, separate actions in the Southern District of New York: *VR Optics*, as discussed above, and *Icon Health & Fitness, Inc. v. Peloton Interactive, Inc.* ("*Icon Health*"), 16-CV-8303 (S.D.N.Y.). *Icon Health* was initially filed in the Central District of California.  However, in September 2016, Peloton moved successfully to transfer the case to the Southern District of New York, arguing that "all of the relevant factors regarding convenience and the interests of justice weigh heavily in favor of transfer" to the Southern District of New York.  (Ginsberg Decl., Ex. A, Doc. 27-1 at 1; *see also id.*, Ex. A, Doc. 27-1 at 6-12.)  *VR Optics* remains pending, and fact discovery is heading towards completion.  (*Id.*, Ex. E (September 28, 2018 text order granting motion for extension of time to complete discovery).)

The court in *VR Optics* has already expended a significant amount of time learning about at-home exercise technology of the type at issue in this action.  Like the Asserted Patents, the patent at issue in *VR Optics* is directed to interactive exercise equipment, including stationary bikes, in which users' performance parameters are compared via a visual display. (*Id.*, Ex. B, ¶¶ 12, 14-15.) A claim construction hearing was held on August 2, 2018 on that patent.  (*Id*., Ex. E (August 2, 2018 minute entry.)  The practical considerations factor thus favors transfer to the Southern District of New York to promote judicial economy and avoid duplication of that court's efforts.  *See Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-CV-376, 2014 U.S. Dist. LEXIS

11

56880, at *11 (E.D. Tex. Apr. 24, 2014) (practical considerations factor favors transfer where district "currently presides over another patent case . . . involving similar accused technology").

      **B.**     <u>**The Public Interest Factors Weigh in Favor of Transfer**</u>

          **1.**     *The Southern District of New York has a Greater Local Interest in This Action*

The Southern District of New York has a strong local interest in this action because both parties were founded and at all times headquartered there; the research, design and development of both parties' products at issue took place there; this action involves a number of individuals significantly vested in the accused technology who live and work there, and the two parties employ a significant number of people there.

As discussed above, the bulk of the design and development of the FLY Anywhere bike, as well as Peloton's bike, took place in New York.  (*See* Cohen Decl., ¶¶ 4-5; Ginsberg Decl., Ex. A, Doc. 27-1 at 1-4.)  This case involves allegations between two parties that each call New York home.[4]  *See Lifestyle Sols., Inc. v. Abbyson Living LLC*, No. 2:16-CV-1290, 2017 U.S. Dist. LEXIS 187241, at *12 (E.D. Tex. Nov. 10, 2017) (local interest factor favors transfer where defendants are headquartered in the transferee district); *Evolutionary Intelligence, LLC*, 2013 U.S. Dist. LEXIS 187467, at *28-29 ("As the Defendants' home district and the former headquarters of Plaintiff, the [transferee district's] interest in this case is extremely significant."). And this suit's infringement accusations implicate the reputation of Flywheel's three individual founders, two of whom work and reside in the New York metropolitan area.  (Cohen Decl., ¶ 4.) *See Groupchatter, LLC*, 2016 U.S. Dist. LEXIS 16574, at *19-21 (transferee district had local

---

[4] In its motion to transfer the *Icon Health* case, for example, Peloton argued it "was born and has developed quickly in New York's nascent [']Silicon Alley['] . . . is involved with a range of New York technology initiatives including Digital.NYC[, and its] principal investors—Tiger Global and the Catterton Group—are major investment groups also based in the New York metropolitan area."  (Ginsberg Decl., Ex. A, Doc. 27-1 at 12.)

interest because defendant "identified individuals whose work and reputation are being called into question by allegations of infringement").  Further, combined, Peloton and Flywheel employ over 700 people in the New York metropolitan area.  (Cohen Decl., ¶ 13; Ginsberg Decl., Ex. A, Doc. 27-1 at 3.)  By contrast, Flywheel employs only twenty-eight people in its Plano and Highland Park studios combined (Cohen Decl., ¶ 13), of which only Plano is located within the Eastern District of Texas.  *See Wireless Recognition Techs. LLC v. A9.com Inv.*, No. 2:10-CV-364, 2012 U.S. Dist. LEXIS 19210, at *20 (E.D. Tex. Feb. 14, 2012) (granting transfer where, among other reasons, "the residents of the [transferee district] have a particularized interest in the subject matter of this lawsuit because the majority of the Defendants are headquartered there, . . . developed the allegedly infringing products [there,] and collectively employ thousands of people residing there").

The Southern District of New York has a strong interest in this patent infringement case between two New York-based companies.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2011) (local interest factor strongly favors transfer where "[t]he company asserting harm and many of the companies alleged to cause that harm are all residents of [the transferee] district, as are the inventor and patent prosecuting attorneys whose work may be questioned at trial.").  By contrast, the Eastern District of Texas has no particular local interest in this controversy. *Realtime Data, LLC v. Fujitsu Am., Inc.*, No. 6:16-CV-1035, 2017 U.S. Dist. LEXIS 27426, at *27 (E.D. Tex. Feb. 27, 2017) ("[W]hen products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue.") (citing *Nintendo*, 589 F.3d at 1198).  The local interest factor thus weighs heavily in favor of transfer to the Southern District of New York.

13

## 2. *The Remaining Public Factors are Neutral*

The remaining public interest factors are neutral: both districts are familiar with federal patent law, and there does not appear to be any conflicts of law. *See Landmark Tech., LLC v. Ann Inc.*, No. 6:12-CV-672, 2013 U.S. Dist. LEXIS 92384, at *13-15 (E.D. Tex. July 1, 2013); *Dietgoal Innovations LLC v. Time Inc.*, No. 2:12-CV-337, 2013 U.S. Dist. LEXIS 41524, at *11 (E.D. Tex. Mar. 25, 2013).  Relative court congestion "is the most speculative, and cannot alone outweigh other factors," and is thus often treated as neutral.  *Landmark Tech., LLC*, 2013 U.S. Dist. LEXIS 92384, at *13-14 (citing *Genentech*, 566 F.3d at 1347) (finding court congestion factor was neutral and noting that court statistics regarding time to trial "pertain to civil cases generally and are not directly related to patent cases [and t]hus, they provide little guidance with respect to court congestion regarding patent cases"); *Groupchatter, LLC*, 2016 U.S. Dist. LEXIS 16574, at *19 ("[D]ue to its speculative nature, the Court finds this factor neutral.").

## IV. <u>CONCLUSION</u>

Because numerous private interest and public interest factors strongly favor transfer to the Southern District of New York, and no factor favors the Eastern District of Texas, the Southern District of New York is "clearly more convenient" than this forum.  *Toyota*, 747 F.3d at 1341.  For all of the foregoing reasons, Flywheel respectfully requests that its motion to transfer this case to the Southern District of New York be granted.

Dated:  November 5, 2018

Respectfully submitted,

*/s/ Jeffrey S. Ginsberg*
Jeffrey S. Ginsberg (NY Bar No. 2608487)
David Cooperberg (NY Bar No. 4888020)
Ryan Mott (NY Bar No. 5098157)

14

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2000
Facsimile:   (212) 336-2222
jginsberg@pbwt.com
dcooperberg@pbwt.com
rmott@pbwt.com

Deron Dacus (Texas Bar No.00790553)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Defendant Flywheel Sports, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on November 5, 2018.

*/s/ Jeffrey S. Ginsberg*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h).  The motion is opposed.  On November 1, 2018, I, Jeffrey S. Ginsberg (counsel for Defendant) met and conferred by telephone with Steven Feldman (counsel for Plaintiff).  No agreement could be reached during these discussions because the parties have a fundamental disagreement as to the appropriate forum for hearing this case.  The discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Jeffrey S. Ginsberg*

16