IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PELOTON INTERACTIVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:18-cv-00390-RWS-RSP |
| v. | § | |
| | § | |
| FLYWHEEL SPORTS, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM ORDER**

Defendant Flywheel Sports, Inc. (hereinafter "Flywheel") filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), which is now before the Court. (Dkt. No. 17.)[1] This Motion seeks to transfer this case from the Eastern District of Texas to the Southern District of New York. Proper venue is not contested, as both parties have regular and established places of business in this district and Plaintiff has more than 100 employees at its "second headquarters" in the district. After consideration of the parties' briefing, the Court finds that Flywheel has not established that venue would be clearly more convenient in the SDNY.

I. **APPLICABLE LAW**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)

---

[1] The Court will not consider the new evidence that Defendant attached to its Reply Brief. *Chrimar Systems, Inc. v. Dell, Inc.*, 2016 WL 9275408 (E.D. Tx. 2016).

("*Volkswagen II*"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses; (2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id.*

A plaintiff's choice of venue is not an express factor in the analysis. *Seven Networks, LLC v. Google LLC*, 2:17-CV-00442-JRG, 2018 U.S. Dist. LEXIS 146375, at *8 (citing *Volkswagen II*, 545 F.3d at 315). However, a moving defendant must demonstrate that the proposed venue is clearly more convenient that the original venue. *Id*. (citing *Volkswagen II*, 545 F.3d at 315). By applying this heightened standard, the plaintiff's choice of forum is given the appropriate deference. *Id*. (citing *Volkswagen II*, 545 F.3d at 315).

Motions to transfer venue "are to be decided based on 'the situation which existed when suit was instituted.'" *Evolutionary Intelligence, LLC v. Apple, Inc*., Case No. 6:12-cv-00783, 2013 U.S. Dist. LEXIS 187467, *11 (E.D. Tex. Aug. 27, 2013) (quoting *In re EMC Corp*., 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960))). However, the analysis may consider circumstances that were "apparent at the time the suit was filed." *In re EMC Corp*., 501 Fed. Appx. at 976.

"'A district court should assess the relevance and materiality of the information the witness may provide' and where a party has 'identified witnesses relevant to [the] issues [present in a case], [] the identification of those witnesses weighs in favor of [the identifying party].'" *Seven Networks*, 2018 U.S. Dist. LEXIS 146375, at *8 (quoting *In re Genentech, Inc*., 566 F.3d 1338, 1344 (Fed.

Cir. 2009)). "[T]o properly analyze convenience, specific witnesses should be identified with, at a minimum, a general statement providing the expected relevant and material information to the litigation at hand." *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017).

## II. ANALYSIS

As an initial matter, the Court notes that this case could have been brought in the S.D.N.Y. Peloton does not contest this point. (Dkt. No. 25 at 2.) Accordingly, the Court focuses its analysis on the convenience factors to see whether SDNY is a clearly more convenient forum than EDTX.

The parties do not argue that either "the avoidance of unnecessary problems of conflict of laws" or the "familiarity of the forum with the law that will govern the case" factors weigh one way or the other. (Dkt. No. 17 at 14; *see* Dkt. No. 25 at 11–15 (providing no discussion of these factors when addressing the public interest factors).) The Court therefore finds these factors to be neutral. The Court will address each of the remaining public and private interest factors below.

### a. The availability of compulsory process to secure the attendance of witnesses

This factor is directed towards unwilling third-party witnesses. *Seven Networks,* 2018 WL 4026760, at *7 (citing *Volkswagen II*, 545 F.3d at 316). Flywheel identifies Yu Feng[2] and Christopher Sira, who were inventors of the asserted patents. (Dkt. No. 17 at 8; U.S. Pat. No. 9,174,085 at [72]; U.S. Pat. No. 9,233,276 at [72].) However, Feng is a party witness as he currently serves as Peloton's Chief Technology Officer. (Dkt. No. 25 at 7 (citing Foley Decl. at ¶ 4).) Further, Sira is willing to attend the trial, making compulsory process unnecessary for him. (*Id.* (citing Dkt. No. 25-6 at ¶ 4).) Accordingly, the Court concludes that Feng and Sira would be

---

[2] The parties discuss a Yu Feng and a Yony Feng, but it appears that both of these names are referring to the same person.

more appropriately considered under other factors and that they do not provide support for this factor.

Flywheel also identifies Eric Villency and Joseph Coffey of the Villency Design Group (hereinafter "VDG") as potential witnesses. (Dkt. No. 17 at 9.) However, the Court concludes that Villency and Coffey do not provide any support for a transfer to SDNY.

VR Optics, LLC., a company owned by Villency and Coffey, is currently asserting U.S. Patent No. 6,902,513 (hereinafter "'513 Patent") against Peloton in SDNY,[3] and Peloton filed a third-party complaint in that action against Villency, Coffey, and VDG, which is another company owned by Villency and Coffey. *VR Optics*, Dkt. No. 57 at 1–2. VR Optics, LLC purchased the '513 Patent and then sued Peloton for infringement in *VR Optics*. *VR Optics*, Dkt. No. 1 at ¶ 8 (stating within VR Optics' Complaint that "VR Optics purchased the '513 patent from Microsoft. . . .").

Flywheel states that "Villency and Coffey were involved in the development of the Peloton bike, and Peloton has alleged that their design firm [VDG] represented that Peloton's bike did not infringe certain prior art patents closely related to the Asserted Patents." (Dkt. No. 17 at 9.) Flywheel asserts that Villency and Coffey will testify about "technology at the heart of the asserted patents" and its relationship to the prior art. (Dkt. No. 28 at 3.) Flywheel asserts that the '513 Patent is one of those prior art patents and that the patent is closely related to the technology at issue in this case. (*Id*.) Peloton argues that VDG "was involved solely in the design of the physical Peloton bike" and "had zero involvement with any of the patented technology at issue in this case." (Dkt. No. 25 at 7.)

---

[3] *VR Optics, LLC v. Peloton Interactive, Inc*., 1:16-cv-06392 (S.D.N.Y.). The Court will refer to this case as "*VR Optics*."

The Court concludes that Flywheel has failed to show that Villency and Coffey will provide information that has any significant relevance to this case. While Flywheel asserts that it intends to call Villency and Coffey to testify about "technology at the heart of the asserted patents" and its relationship to the prior art, Flywheel does not explain how the technology that Villency and Coffey may testify about is at the heart of the asserted patents. (Dkt. No. 28 at 3.) This is a conclusory statement that is contradicted by the patents themselves—the claims of the asserted patents are largely directed to methods for providing live and archived cycling classes to remote users, focusing on telecommunications and the management of data rather than any aspects of the physical bike. Peloton has asserted that Villency and Coffey were only involved in the design of the physical Peloton bike, and Flywheel has not persuasively rebutted that assertion.

In the *VR Optics* case, Peloton alleged that (1) VDG represented and warranted that Peloton's bike did not infringe upon any patent rights of others and (2) VDG should therefore indemnify Peloton for the infringement claims based on the '513 Patent. (Dkt. No. 17 at 3–4 (citing Dkt. No. 17-5 at ¶ 46; *VR Optics,* Dkt. No. 42 at ¶ 46 (citing language from a Design, Development and Manufacturing Agreement between VDG and Peloton that "the Bike Intellectual Property does not and will not infringe upon the rights of any third party."))). While Flywheel points to those allegations made by Peloton for support, none of those alleged representations show that VDG's owners, Villency and Coffey, will be able to provide testimony with any significant relevance to this case, which involves entirely different patents.[4]

Flywheel does not specify Villency's or Coffey's anticipated testimony other than to say that they will talk about the technology generally. However, "[p]rior art inventors, while theoretically relevant, rarely testify, and their locations should be given little weight." *Affinity Labs*

---

[4] Peloton was asserting that VDG was responsible for incorporating the placement and design of a tablet into the structure of the stationary bike and that the stationary bike was part of the allegedly infringing system in that case.

of Texas v. Samsung Elecs. Co*., 968 F. Supp. 2d 852, 857 (E.D. Tex. 2013) (citing *PersonalWeb Techs., LLC v. NEC Corp. of Amer., Inc*., 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013)). Here, Villency and Coffey were not even inventors of the other patent—their company, VR Optics, was assigned the patents. Thus, Villency and Coffey appear to have even less relevance to these patents than the inventor would. Because the parties have not identified any other witnesses that should be considered under this factor, the Court concludes that this factor is neutral.

### b. The cost of attendance for willing witnesses.

When considering this factor, the court should consider all potential material and relevant witnesses. *Seven Networks*, 2018 WL 4026760, at *9. However, "[t]his factor primarily concerns the convenience of nonparty witnesses," and "the convenience of party witnesses is given little weight." *Id*. (quoting *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc*., No. 3:10-CV-2466-D, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011)).

#### i. Willing nonparty witnesses

Because Christopher Sira is a willing nonparty witness (Dkt. No. 25-6 at ¶ 4), he is appropriately considered under this factor. Flywheel asserts that Sira resides in the New York City Metropolitan Area. (Dkt. No. 17 (citing Dkt. No. 17-8 at 3) (showing Sira as having a New York City address on an application data sheet for the asserted patents)). Flywheel asserts that Sira "is likely to have relevant information regarding the development and prosecution of the Asserted Patents. . . ." (*Id*. at 8.) Sira would have to travel a much greater distance if the trial took place in EDTX instead of SDNY, suggesting that SDNY would be more convenient for him.

Peloton argues that a trial in EDTX would be more convenient than SDNY for Hans S. Woolley. (Dkt. No. 25 at 9.) Woolley is a nonparty witness as he states that he is not an employee of Peloton, and he is another named inventor on the patents-in-suit. (Dkt. No. 25-7 at ¶¶ 2–3.)

Peloton provides a declaration from Woolley, which states that "because of my residence in Los Angeles, attending trial in Eastern District of Texas would be more convenient for me than the Southern District of New York." (*Id*. at ¶¶ 4, 6.) Accordingly, the inconvenience of a trial in SDNY to Woolley weighs against transfer.

### ii. Willing party witnesses

Where the vast number of a defendant's employees, including those that were responsible for projects related to the accused products, work in the proposed venue, the Federal Circuit determined that this fact supported transfer. *In re Google Inc*., No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017). Here, Flywheel states that all of its employees responsible for the design, development, testing, marketing, and sales of the accused product work and reside in the SDNY and surrounding communities. (Dkt. No. 17 at 7 (citing Cohen Decl. at ¶¶ 4–5, 8–10).) However, Peloton has shown that less than 8% of Flywheel's employees actually work in the SDNY, and Flywheel does not identify any specific employee that they will have testify. This failure limits the weight that should be given to this factor—without specific people and locations identified, the Court cannot fully analyze the convenience in one forum versus another. *Seven Networks,* 2018 WL 4026760, at *5 (quoting *Oyster Optics, LLC v. Coriant Am. Inc*., No. 2:16-cv-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017)). Further, "the convenience of party witnesses is given little weight." *Id*. at *9.

Flywheel also asserts that most of Peloton's employees involved in the production of their competing product are also located in or near SDNY based on representations made by Peloton in 2016 that its operations were based in New York. (*Id*. (citing Dkt. No. 27-3 at 2–3, 8).) However, this representation does not apply two years later, especially since Peloton had opened a new

headquarters in Texas before the lawsuit was commenced. (Dkt. No. 25 (citing Dkt. No. 25-3 at ¶ 5).) Accordingly, Peloton's 2016 representations provide negligible support for this factor.

Flywheel's arguments with respect to Yu Feng fit within this factor as he is a party witness for Peloton. (Dkt. No. 25-2 at ¶ 4.) Flywheel argues that Feng is "likely to have relevant information regarding the development and prosecution of the Asserted Patents, and Flywheel expects to seek [his] testimony. . . ." (Dkt. No. 17.) Since Feng has declared his preference for a trial in this district, he adds little support for transfer under this factor.

Both parties have shown inconvenience to a willing nonparty witness that supports their positions under this factor, and the overall amount of inconvenience will be approximately the same in either venue with respect to those willing nonparty witnesses. However, the showing with regard to willing party witnesses weighs in favor of transfer but that factor does not weigh heavily in the analysis.

### c. The relative ease of access to sources of proof.

This is an action between competitors, both of which have extensive relevant documents. Flywheel argues that "all of its documents that are likely to be most relevant to this action are located in the Southern District of New York." (Dkt. No. 17 at 10.). Similarly, Peloton points to its second headquarters in this district. The purpose of §1404 is not to transfer the convenience from one party to the other. Flywheel has not established that the sources of proof are clearly more accessible to the SDNY.

### d. Other practical problems that make trial of a case easy, expeditious, and inexpensive.

Flywheel argues that two infringement lawsuits have already been filed against Peloton in SDNY. (Dkt. No. 17 at 11.) These two cases are *Icon Health & Fitness, Inc. v. Peloton Interactive, Inc.*, 16-CV-8303 (S.D.N.Y.) and the *VR Optics* case referenced above.

"[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id*. (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).

Neither *Icon Health* nor *VR Optics* provides any support for transferring this case to SDNY. Neither case had anything to do with the Peloton patents asserted here. Peloton was merely defending against claims involving other competitors. Nor was Flywheel a party to those cases. Thus, the SDNY is not familiar with the patents being asserted here and no risk of contradictory decisions exists if this Motion to Transfer is denied. Furthermore, SDNY is a large district, and there is no guarantee that this case would be presented to the same judge that is presiding over the *VR Optics* case. The identification of one case involving stationary bikes in that district does not provide support for a transfer. The Court therefore concludes that this factor is neutral.

### e. Administrative difficulties flowing from court congestion.

This factor weighs against transferring the case. "The relevant inquiry under this factor is '[t]he speed with which a case can come to trial and be resolved . . . .'" *Seven Networks*, 2018 WL 4026760, at *14 (quoting *Genentech*, 566 F.3d at 1347).

Peloton shows that the average length of time between filing and trial in EDTX is 10.6 months less than it is in SDNY. (Dkt. No. 25 at 11–12 (citing Federal Judicial Caseload Statistics

2018 Tables, Table C-5 (Mar. 31, 2018), available at: http://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables).) Flywheel does not attempt to rebut Peloton's argument in Flywheel's Reply. Because the statistics show that a trial would likely occur more than 10 months earlier if the case proceeds in EDTX, this factor weighs against a transfer. Peloton further argues that this case involves competitors, increasing the importance of this factor due to the increased harm from delay of trial.

### f. Local interest in having localized interests decided at home.

"The Court must also consider local interest in the litigation because '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-CV-376-JRG, 2014 WL 1652603, at *4 (E.D. Tex. Apr. 24, 2014) (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("*Volkswagen I*")). This Court has found the localized interest factor to be neutral in past cases where this venue and the proposed venue both possessed a localized interest in the case. *Seven Networks*, 2018 WL 4026760, at *14 (Aug. 15, 2018); *Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, 2018 WL 4444097, *8 (E.D. Tex. 2018); *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-00621-JRG-RSP, 2016 WL 4196663, at *6 (E.D. Tex. Aug. 9, 2016); *Mears*, 2014 WL 1652603, at *4 (Apr. 24, 2014).

SDNY has a local interest in the case. Flywheel argues that SDNY is where both parties were founded, where both parties are headquartered, and where the design of the accused and patent practicing products were designed and developed. However, the Court disagrees with Flywheel's assertion that the EDTX has no particularized interest in this controversy. Peloton has shown that "Peloton headquarters has been open and hiring employees in Plano since June 2018, three months before the Complaint in this case was filed." (Dkt. No. 25 at 13 (Olson Decl. ¶ 5).)

Based the opening of that facility, it was apparent at that time the suit was instituted that a large number of employees would be hired in that location. Peloton had 135 employees in its Plano headquarters on November 29, 2018 (Dkt. No. 25-3 at 12), and it likely had a large number of employees on September 12, 2018 when this case was filed. Further, Peloton points out that "Peloton has also had a showroom in Plano since March 2018, has seven showrooms throughout Texas, and has thousands of members in Texas, including 6,000 in this district alone." (*Id*. at 12 (Olson Decl. ¶ 8–9).) This evidences a local interest in the EDTX, as well.

Because both districts have local interests in this case, this factor is neutral.

### III. CONCLUSION

Considering all of the evidence in the record, Flywheel has failed to show that trial in the SDNY would be clearly more convenient. Accordingly, the Court **DENIES** Defendant Flywheel Sports, Inc.'s Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 17.)

**SIGNED this 30th day of May, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE