**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PELOTON INTERACTIVE, INC., | § § § | |
| *Plaintiff*, | § § | Case No. 2:18-cv-00390-RWS-RSP |
| v. | § § | |
| FLYWHEEL SPORTS, INC., | § § § | |
| *Defendant*. | § | |

### MEMORANDUM ORDER

Before the Court is Defendant Flywheel Sports, Inc.'s ("Flywheel") Motion to Stay Pending *Inter Partes* Review Proceedings ("Motion to Stay") (Dkt. No. 62). The Court concludes that Flywheel has not sufficiently shown that a stay would simplify the issues within the case, and the Court concludes that a stay would result in significant prejudice for Plaintiff Peloton Interactive, Inc. ("Peloton") based on the facts in this case. Accordingly, the Court **DENIES** Flywheel's Motion to Stay.

### I. BACKGROUND

Peloton asserts claims of patent infringement against Flywheel, asserting U.S. Patent Nos. 9,174,085 ("'085 Patent"), 9,233,276 ("'276 Patent"), 9,861,855 ("'855 Patent"), and 10,322,315 ("'315 Patent"). The Patent Trial and Appeal Board ("PTAB") instituted *Inter Partes* Review ("IPR") proceedings for the '085, '276, and '855 Patents. (Dkt. Nos. 62-3, 62-4, 62-5). The '315 Patent issued on June 18, 2019. '315 Patent at [45]. Peloton represents that the '315 Patent is part of the same patent family as the '085, '276, and '855 Patents and that the '315 Patent is a direct continuation of those patents. (Dkt. No. 64 at ¶ 108.) Additionally, Flywheel represented at the August 12, 2019 hearing that it filed an IPR petition for the '315 Patent on Friday, August 9, 2019.

## II. APPLICABLE LAW

"The party seeking a stay bears the burden of showing that such a course is appropriate." *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, No. 6:16-cv-00086-RWS-JDL, 2017 WL 3712916, at *3 (E.D. Tex. Feb. 3, 2017). "The decision of whether to extend a stay falls solely within the court's inherent power to control its docket." *Pers. Audio LLC v. Google, Inc.*, No. 1:15-cv-350-RHC, 230 F. Supp. 3d 623, 626 (E.D. Tex. 2017) (citing *ThinkOptics, Inc. v. Nintendo*, No. 6:11-cv-455-LED, 2014 WL 4477400, at *1 (E.D. Tex. Feb. 27, 2014)); *accord Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings including the authority to order a stay pending conclusion of a PTO reexamination."); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In determining whether to stay litigation pending IPR, courts within this district have considered three factors: (1) "whether the stay will simplify issues in question in the litigation," (2) "whether the stay will unduly prejudice the nonmoving party or present a clear tactical disadvantage to the nonmoving party," and (3) "whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set. . . ." *Id.* (citing *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015)). Whether a stay "will result in simplification of the issues before a court is viewed as the most important factor when evaluating a motion to stay." *Uniloc USA, Inc. v. Acronis, Inc.*, No. 6:15-CV-01001-RWS-KNM, 2017 WL 2899690, at *3 (E.D. Tex. Feb. 9, 2017) (citing *Intellectual Ventures II LLC v. Kemper Corp.*, No. 6:16-cv-0081-JRG, 2016 WL 7634422, at *2 (E.D. Tex. Nov. 7, 2016) (citing *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015))).

## III. ANALYSIS

Based on the facts of this case, the Court concludes that a stay would not be appropriate. The Court will address each of the three stay factors—simplification, prejudice, and the stage of the case—below.

### a. A stay would not significantly simplify the issues of the present litigation, suggesting that a stay is not appropriate.

This factor weighs against a stay in the present case for several reasons. **First**, no institution decision has been made for the '315 Patent. **Second**, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) (hereinafter "*SAS*") precluded the PTAB from instituting IPRs for only a portion of the patent claims, so any institution decision occurring after *SAS* provides a weaker inference that the PTAB will determine that all challenged claims are unpatentable. Thus, institution decisions for the '085, '276, and '855 Patents are less helpful in indicating that IPRs will result in a simplification of issues than they would have been before *SAS*. **Third**, Flywheel indicated at the August 12, 2019 hearing that it intended to present several additional invalidity theories if the instituted IPR proceedings are not fully successful, so the scope of the invalidity contentions is significantly broader than the invalidity theories presented for IPR proceedings. Each of these reasons suggest that this factor weighs against a stay.

First, the PTAB has not yet instituted review for the '315 Patent. Courts in this district have often concluded that the simplification factor weighed against a stay where the PTAB had not instituted IPR proceedings for all asserted patents. *See, e.g.*, *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:16-CV-475-KNM, 2018 WL 4261194, at *3 (E.D. Tex. May 8, 2018) (concluding that simplification factor weighed against a stay where IPR had been instituted for only two of the three patents-in-suit). The PTAB has not instituted IPR proceedings for all asserted patents, this suggests that a stay is not appropriate.

For the **second** reason provided above, the Court concludes that the Supreme Court's decision in *SAS* alters the Motion to Stay analysis and makes institution decisions less indicative that all claims will be found unpatentable. "If an *inter partes* review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner. . . ." 35 U.S.C. § 318. In *SAS*, the Supreme Court interpreted this language to mean that the PTAB "*must* address every claim the petitioner has challenged." 138 S. Ct. at 1354. Before *SAS*, the PTAB could partially institute IPR proceedings, instituting review of some challenged claims but not others. After *SAS*, the PTAB cannot partially institute IPR proceedings—the PTAB must now institute IPR proceedings as to all challenged claims.

Since the PTAB can no longer partially institute IPR proceedings, institution decisions are not as useful as they were in the past for providing an indication of whether all claims would be found unpatentable. Because the PTAB could partially institute review before *SAS*, their institution decisions provided a much stronger indication that all claims for which review was instituted would be found unpatentable. This is because the PTAB could decline institution for certain challenged claims if the PTAB concluded that the petitioner had not shown a reasonable likelihood of prevailing for those claims. When the PTAB decides to institute review after *SAS*, it must institute review for all challenged claims even if the PTAB concludes at the petition stage that the petitioner did not show a reasonable likelihood that it would prevail for some challenged claims. Flywheel argues that the PTAB may still decline institution of IPR proceedings even if it concludes that the petition has shown a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition. However, the Court still concludes that an

institution decision is less effective as a barometer for the issue of whether the PTAB will eventually determine that the challenged claims are unpatentable after *SAS*.

With respect to this case, the fact that the PTAB has instituted IPR proceedings for three of the four asserted patents still permits an inference that a stay would simplify the case to some degree. However, that inference is weaker after *SAS*.

As to the **third** reason listed above, Flywheel will likely assert invalidity theories under 35 U.S.C. §§ 101, 102, 103, 112(1), and 112(2), suggesting that a stay would not significantly simplify the issues in the present case. *See Saint Lawrence Comm''ns LLC v. ZTE Corp.*, No. 2:15-CV-349-JRG, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017) (determining that the simplification factor weighed against a stay where the invalidity theories within the litigation "far exceed the limited scope of the pending IPR"); *Unifi Sci. Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-CV-221-LED-JDL, 2014 WL 4494479, at *2 (E.D. Tex. Jan. 14, 2014). Flywheel's counsel indicated at the August 12, 2019 hearing that, if the PTAB eventually concludes that some challenged claims are not unpatentable, then Flywheel will still assert invalidity theories under §§ 102 and 103 based on prior art that does not consist of patents and printed publications. *See* 35 U.S.C. § 311(b) (Flywheel's IPR challenges are limited to invalidity grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications"); 35 U.S.C. § 315(e)(2) (stating that if an IPR results in a final written decision and if a petitioner raised or reasonably could have raised an invalidity theory in IPR, then the petitioner is estopped from arguing that invalidity theory in a subsequent civil action). Flywheel argues that the asserted claims are invalid under 35 U.S.C. § 101, and Flywheel asserted a Motion to Dismiss on that issue. (Dkt. No. 89.) Peloton also indicates that Flywheel has raised invalidity theories under 35 U.S.C. §§ 112(1) and 112(2). (Dkt. No. 67-1 at ¶ 18.) Since the scope of Flywheel's

invalidity theories is significantly larger than the scope of the invalidity theories presented in the institated IPRs, any stay would not result in significant simplification of the case.

Accordingly, the simplification factor weighs against a stay.

### b. A stay would cause undue prejudice to Peloton, suggesting a stay is not appropriate.

The prejudice factor weighs against a stay for several reasons. **First**, this case involves direct competitors and Peloton asserts that Flywheel is rapidly increasing its sales of the accused products. **Second**, a stay may result in significant delays, especially considering the significant possibility that a final IPR determination may be appealed.

Peloton's product practicing the patent-in-suit competes with Flywheel's accused product in the marketplace, so a stay would result in heightened prejudice for Peloton as compared to other cases. Peloton provided several websites where these products were compared to one another. (Dkt. Nos. 67-5, 67-6, 67-7.) For cases involving direct competitors, courts within this district are "generally reluctant to stay proceedings when the parties are direct competitors." *Smartflash LLC v. Apple, Inc.*, No. 6:13-CV-447, 2014 WL 3366661, at *5 (E.D. Tex. July 8, 2014) (citing *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 495 (D. Del. 2013); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009)); *see also Allure Energy, Inc. v. Nest Labs, Inc.*, No. 9-13-CV-102-RHC, 2015 WL 11110606, at *1 (E.D. Tex. Apr. 2, 2015) (stating that, in patent cases involving direct competitors, plaintiffs have a "recognized interest in the timely enforcement of their patent rights"); *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-CV-00799-LED, 2014 WL 4477393, at *2 (E.D. Tex. July 25, 2014) (same). Accordingly, the relationship of the parties suggests that this factor should weigh against a stay.

Additionally, the competitive nature between the parties will likely increase even further in the near future. Flywheel has recently started selling its accused products on Amazon.com and

at Best Buy stores. (Dkt. No. 67-9.) Peloton contends that this will result in a dramatic increase in sales of the accused products. (Dkt. No. 67 at 8.) While Peloton has not provided any data to show an increase in sales, the Court recognizes that this data likely is not yet available. The Court therefore concludes that Peloton's argument has some merit and concludes that the potential increase in sales suggests that a stay would be even more prejudicial to Peloton in the future.

The Court also concludes that a stay may significantly delay resolution of the issues in this case. The PTAB has not yet instituted IPR for the '315 Patent. Peloton only recently amended its Complaint to add the '315 Patent, and Flywheel indicated that it filed an IPR petition on Friday, August 9, 2019. Accordingly, the PTAB must provide an institution decision by February 10, 2020 at the latest.[1] Then, the PTAB would typically be required to provide a final determination within a year after the date on which the Director notices the institution of a review. 35 U.S.C. § 316(a)(11) (indicating that the Director may extend the 1-year period by 6 months for good cause). Thus, a final determination would likely be provided by February 10, 2021. By contrast, the jury selection date for this case is set for June 15, 2020. (Dkt. No. 92 at 1.) Consequently, a final determination for the '315 Patent likely would not be made until eight months after the currently scheduled jury selection date, and this fact suggests that the prejudice factor should weigh against a stay.

While the PTAB has instituted review for three of the asserted patents, a stay may still significantly delay resolution of the issues in this case due to the appellate process. While the PTAB may provide final determinations for the '085, '276, and '855 Patents before the currently

---

[1] The patent owner may file a preliminary response within three months after an IPR petition is filed. 35 U.S.C. § 313; 37 C.F.R. § 42.107(b). The PTAB must provide an institution decision within three months after the filing of a preliminary response or, if no preliminary response is filed, then within three months after the last day on which a preliminary response may be filed. 35 U.S.C. § 314(b). Thus, if no preliminary response is filed or if the preliminary response is filed on the final day, then the PTAB must provide an institution decision six months after any institution decision.

scheduled jury selection date, a significant possibility exists in this case that those determinations would be appealed because of the magnitude of this case. Peloton provided statistics indicating that the median time to disposition for Federal Circuit appeals from the USPTO was 15.0 months in the 2018 fiscal year, and that figure has been rising since the 2016 fiscal year. (Dkt. No. 67-2.) Thus, if the Federal Circuit concluded that any of the claims of the '085, '276, and '855 Patents are not unpatentable, then this Court would likely resume this litigation in August 2021or later. This is a considerable delay, and it suggests that a stay is not appropriate in this case, especially considering the relationship of the parties and the other facts. *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11CV492, 2015 WL 11439060, at *5, 5 n.8 (E.D. Tex. Jan. 5, 2015) (noting that the additional delay imposed by appeals is considerable and that maintaining a stay through such appeals would be very costly); *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-CV-618-JRG-JDL, 2016 WL 9225575, at *2 (E.D. Tex. Dec. 9, 2016).

In view of the facts discussed above, the prejudice factor weighs against a stay.

### c. The stage of the case factor does not significantly impact the analysis here.

"Usually, the Court evaluates the stage of the case as of the time the motion was filed." *Papst Licensing GMBH & Co., KG v. Apple, Inc.*, 6:15-cv-01095-RWS, slip op. at 7 (E.D. Tex. June 16, 2017) (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014)).[2] This Motion to Stay was filed on June 13, 2019. As of that date, a trial date was set. (*See* Dkt. No. 47.) Further, the Discovery Order was entered on February 26, 2019, showing that discovery was underway. (Dkt. No. 46.) Because of the initial disclosure requirements within the Discovery Order and because three and a half months had passed from the date that the Discovery

---

[2] While Peloton argues that courts sometimes consider what has happened after the filing of a Motion to Stay (Dkt. No. 67 at 11 n.3), the Court sees no compelling reason to depart from the typical practice of evaluating the stage of the case as of the time the motion was filed.

Order was entered, the parties should have provided a significant amount of discovery by June 13, 2019. Before June 13, 2019, Peloton had already provided infringement contentions for the '085, '276 and '855 Patents, and Flywheel provided invalidity contentions for the same patents. (*See* Dkt. No. 47 at 4.)

The Court recognizes that the close of fact discovery is still scheduled for January 27, 2020 (*Id*. at 2) and that a significant portion of discovery still remained as of June 13, 2019. However, a significant portion of discovery had already been conducted as of that date. Further, even if the Court were to conclude that this factor weighs in favor of a stay, the other factors (prejudice and simplification) weigh much more strongly against a stay. Accordingly, this factor has little impact on the analysis.

## IV. CONCLUSION

Weighing the factors together, the Court concludes that a stay is unwarranted. Accordingly, Flywheel's Motion to Stay is **DENIED**.

**SIGNED this 14th day of August, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE